IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

NEUTRON DEPOT, LLC,
Plaintiff,

-vs-

BANKRATE, INC., MAXIM
METALNIKOV, and SUNTI PROMPUN,
Defendants.

CAUSE NO.:
AU-16-CA-01170-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically, Defendant Bankrate's Motion for Partial Summary Judgment [#267], Neutron Depot's Response [#269] in opposition, and Bankrate's Reply [#270] in support.[1] Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and order.

## Background

This is a trademark infringement action. In 1993, CSi Agency Services, Inc. (CSi) began using the phrase "Insurance Depot" (the Mark) to advertise its insurance services, and in 1994, the U.S. Patent and Trademark Office (USTPO) issued a certificate of registration ) issued CSi a certificate of registration for use of the term "Insurance Depot" as a service mark in promoting insurance agency services. Mot. Sanctions [#218] Ex. A (Maxwell Decl.) at 31–32.[2]; *id.* [#218] Ex. A-4 (Certificate of Registration) at 42–44.

---

[1] Neutron Depot also filed a Motion to Strike Bankrate's Motion for Partial Summary Judgment [#268] on the ground it exceeded page limits set by the local rules. This motion is DENIED.

[2] In the interest of consistency, all docket citations refer to CM/ECF pagination.

1

The president and sole owner of CSi is Jim Maxwell. *Id.* at 30. Maxwell also happens to be the manager and part owner of another company, Neutron Depot. *Id.* In August 2013, in his capacity as president of CSi, Maxwell licensed the Mark to Neutron Depot.[3] Resp. Mot. Sanctions [#218] Ex. B-3 (License Agreement) at 73–78.

Defendant Bankrate is a consumer financial services company. One of Bankrate's divisions—the insurance lead division—helps insurance companies find prospective customers. Mot. Summ. J. [#267-2] (Kent Report) at 7–15. To locate these prospective customers, Bankrate uses millions of keywords in ads and web pages to drive traffic to websites through which Bankrate collects the contact information of prospective customers. *Id.* Bankrate then sells this contact information—the "lead"—to insurance companies. *Id.*

Most of the millions of keywords used by Bankrate are generated by algorithm, and at some point in 2010, Bankrate began using the Mark as one of its keywords. Notice Filing [#266-1] Rihtar Dep. Tr. at 70; Kent Report at 22–24 (explaining process of keyword generation). Between 2010 and 2014, Bankrate's use of keywords in ads and web pages generated nearly 7.6 million leads. Rihtar Dep. Tr. at 70. Bankrate's use of the Mark as a keyword was responsible for generating, at most, *seventy-three* of these leads. *Id.*

In May 2014—less than a year after licensing the Mark from CSi—Neutron Depot filed this suit against Bankrate for trademark infringement. Compl. [#1]. After Bankrate learned of the lawsuit, it immediately removed all ads and webpages containing the Mark, and, in December 2015, Bankrate sold off its insurance lead division altogether. Rihtar Dep. Tr. at 119–22; Mot. Transfer [#149-1] Ex. A at 2. Though Neutron Depot alleges it suffered "financial loss and loss of goodwill" as a result of Bankrate's infringement, Neutron Depot has not presented any

---

[3] Subsequently, during the pendency of this litigation, Maxwell executed an assignment of the Mark to Neutron Depot in an attempt to bolster Neutron Depot's position in this litigation. Third Am. Compl. [#186-2] Ex. 2 (Assignment Agreement).

2

evidence of lost sales or other financial harm. Resp. Mot. Summ. J. [#269] at 12. In fact, Neutron Depot does not seek actual damages in this action at all—it seeks only to disgorge the profits Bankrate earned by infringing on the Mark during the term of Neutron Depot's license. *Id.*

In prior orders, this Court dismissed Neutron Depot's claims under §§ 32(1) and 43(c) of the Lanham Act as well as its counterfeiting and state dilution claims. Order of Nov. 30, 2017 [#246]; Order of March 12, 2018 [#265]. As a result, Neutron Depot has only a single remaining claim, brought under § 43(a)(1)(A) of the Lanham Act. Bankrate now files a motion for partial summary judgment which is ripe for review. Mot. Summ. J. [#267].

## Analysis

### I. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

On the basis of its claim under § 43(a)(1)(A) of the Lanham Act, Neutron Depot seeks disgorgement of Bankrate's profits, punitive damages, and an injunction prohibiting Bankrate from infringing on the Mark in the future. Third Am. Compl. [#186] at 23–26. Neutron Depot also argues it has brought an independent claim against Bankrate for unjust enrichment. Resp.

4

Mot. Summ. J. [#269] at 15–16. Meanwhile, Bankrate contends the Court should grant summary judgment on these claims for relief because Neutron Depot has failed to submit sufficient evidence to create a genuine issue of material fact as to its entitlement to damages or an injunction. Mot. Summ. J. [#267].

The Court proceeds by first addressing whether there is a genuine issue of material fact as to Neutron Depot's entitlement to an award of profits. The Court then considers Neutron Depot's claim of unjust enrichment. Finally, the Court determines whether Neutron Depot might conceivably be awarded an injunction or punitive damages.

### A. Award of Profits

The Lanham Act allows plaintiffs to recover, "subject to the principles of equity," any profits a defendant has earned through a violation of § 1125(a). *See* 15 U.S.C. § 1117(a). In considering whether an award of profits under § 1117 is appropriate, courts may consider (1) whether the defendant had an intent to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting his rights; (5) the public interest in making the misconduct unprofitable; and (6) whether it is a case of "palming off." *Quick Techs., Inc. v. Sage Grp.*, 313 F.3d 338, 346–51 (5th Cir. 2003) (citing *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526 (5th Cir. 1998). Courts in the Fifth Circuit rarely award profits if there is insufficient proof of actual damages or where the defendant lacked intent to confuse or deceive. *See, e.g., Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l*, 951 F.2d 684, 694–97 (5th Cir. 1992) (declining to award profits absent evidence of lost sales or intent to deceive on the ground such award would be a "windfall"); *Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 459, 461 (5th Cir. 2017) (noting monetary damage awards under § 1117 are

particularly inappropriate "in the absence of a showing of wrongful intent or if there is a lack of sufficient proof of actual damages" (internal quotation marks and citations omitted)).

In this case, an award of profits would be improper because there is insufficient evidence that Bankrate intended to confuse or deceive consumers by using the Mark or that Neutron Depot suffered lost sales as a result of Bankrate's use of the Mark.[4]

First, there is no indication Bankrate used the Mark with an "intent to confuse or deceive" consumers. *Quick Techs.*, 313 F.3d at 346–51. Neutron Depot has pointed to no evidence indicating Bankrate knew of the existence of Neutron Depot when Bankrate and its affiliates used the Mark to drive customers to its web pages. *See* Resp. Mot. Summ J. [#269] at 12–13 (arguing only that Bankrate was reckless in failing to ascertain whether the keywords used in its advertising were registered trademarks);[5] *See* Notice Filing [#199-4] Maxwell Dep. Vol. 4 at 7–8 (suggesting CSi has no reason to believe Bankrate had prior knowledge of CSi's registration of the Mark). To the contrary, the record suggests the Mark is one of millions of keywords selected and purchased en masse by Bankrate with the assistance of keyword-identification algorithms. *See* Kent Report at 22–23 (explaining that keyword lists are created using keyword-identification algorithms and that the marketer often knows nothing about the keyword other than that the algorithm "believes the keyword is a useful match"). Thus, although Bankrate undoubtedly intended to use the Mark to draw consumers to its web pages, there is no indication Bankrate knew the Mark had any independent significance or association with an existing company or product. Relatedly, there is no indication Bankrate was attempting to "palm off" a good or

---

[4] The Court does not reach Bankrate's argument that the defense of unclean hands bars Neutron Depot's ability to recover an award of profits.

[5] Neutron Depot argues reckless disregard for the rights of the mark owner is tantamount to willfulness under § 1117. Resp. Mot. Dismiss [#269] at 13. Neutron Depot is mistaken. In the Fifth Circuit, an infringing act is done willfully under § 1117 if it is done with "with the intent to confuse or deceive." *See, e.g., Quick Techs.*, 313 F.3d at 348–49 & n.9.

6

service as that of Neutron Depot.[6] In fact, Bankrate's insurance lead division did not sell goods or services to consumers at all—it lured consumers to web pages using reflexively generated keywords, collected the consumers' contact information, and then sold that information to insurance companies. Kent Report at 7. Upon these facts, no reasonable jury could conclude Bankrate intended to confuse or deceive consumers by using the Mark as part of this process.

Second, Neutron Depot has pointed to no evidence of diverted sales or other actual damage sustained as a result of Bankrate's use of the Mark.[7] In its response, Neutron Depot alleges it has suffered both financial losses and loss of goodwill as a result of Bankrate's use of the Mark. Resp. Mot. Summ. J. [#269] at 12. Yet Neutron Depot does not identify any evidence to support either of these assertions. Turning first to Neutron Depot's alleged financial losses, Neutron Depot has presented no evidence it has lost any sales or profits as a result of Bankrate's use of the Mark. Though Neutron Depot offers the conclusory assertion that it has suffered "financial loss" because of Bankrate's infringement, the only evidence it cites in support is CSi's unsupported belief the *Mark* has been harmed.[8] *See* Maxwell Dep. Vol. 4 at 7–8 (asserting,

---

[6] Neutron Depot's response to the motion for summary judgment is vague as to what services Neutron Depot and CSi actually provide. *See* Resp. Mot. Summ. J. [#269] at 2 (stating CSi used the Mark "to advertise its insurance services" but failing to explain how or if Neutron Depot has ever used the Mark to sell goods or services).

[7] Though evidence of diversion of a mark owner's sales is not a prerequisite to an award of profits under § 1117, it is one factor considered by courts in the Fifth Circuit in determining whether an award of profits is appropriate. *See Pebble Beach*, 155 F.3d at 554–55 (affirming district court's denial of accounting of profits where there were no diverted sales, no "palming off," and no evidence of willful infringement); *see also Mishakawa Rubber & Woolen Mfg. v. S.S. Kresge Co.*, 316 U.S. 203, 206 ("[I]n assessing profits the plaintiff shall be required to prove defendant's sales only . . . ."); *Streamline*, 851 F.3d at 463 (noting § 1117(a) cautions monetary damages "shall constitute compensation and not a penalty" and observing the Fifth Circuit rarely awards profits absent a showing of wrongful intent and actual damages); *Texas Pig Stands, Inc. v. Hard Rock Café Int'l*, 966 F.2d 956, 957 (5th Cir. 1992) (explaining lack of evidence of diversion is not a defense to a claim of profits under § 1117(a)); *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584–85 (5th Cir. 1980) (holding diversion of sales is not a prerequisite to an award of profits under § 1117). Once the court decides an award of profits *is* appropriate, the defendant bears the burden of isolating profits attributable to its infringement. *Pebble Beach*, 155 F.3d at 554–55 ("'[W]here it is impossible to isolate the profits' from the infringing conduct, the windfall should go to the plaintiff rather than the wrongdoer." (quoting *Mishakawa*, 316 U.S. at 206)).

[8] Even this assertion—that the Mark has been financially harmed by Bankrate's use—is open to question. In a 2017 deposition in another matter, Maxwell stated the Mark has a market value of zero and does not have value.

without explanation, that CSi believed Bankrate's use of the Mark harmed the Mark's value). But Neutron Depot itself has pointed to no evidence of either lost sales or lost profits in support of its contention it has been financially harmed by Bankrate's use of the Mark. And although Neutron Depot argues it has suffered "loss of goodwill" because of Bankrate's infringement, Neutron Depot has presented no evidence as to either the value of its goodwill or the magnitude of the alleged loss. *See* Resp. Mot. Summ J. [#269] at 12; *Texas Pig Stands*, 951 F.2d at 696.

In sum, Neutron Depot has pointed to no evidence in the record creating a genuine issue of material fact as to (1) whether Bankrate intended to confuse or deceive consumers or "palm off" services as those of Neutron Depot, or (2) whether Neutron Depot has suffered any actual damages or lost sales as a result of Bankrate's use of the Mark. Because Neutron Depot has not pointed to sufficient evidence to justify an award of profits under § 1117, the Court grants Bankrate's motion for summary judgment as to Neutron Depot's claim for an award of profits.

## B.     Unjust Enrichment

Under Texas common law, an award for unjust enrichment is based upon the equitable principle that a person has "wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A party may recover under a theory of unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage. *Streamline*, 851 F.3d at 462 (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Though the parties dispute whether unjust enrichment constitutes an independent cause of action apart from Neutron Depot's claim for an award of

---

Joint Motion Sanctions & Dismissal [#204-15] Ex. O at 47–49. Neutron Depot argues this deposition testimony should be excluded because it constitutes "inadmissible hearsay." Resp. Mot. Summ. J. [#269] at 8. But the testimony is not hearsay—it is a prior statement made by an agent of Neutron Depot about a matter within the scope of the relationship and therefore admissible under Federal Rule of Evidence 801(d)(2).

profits, the Fifth Circuit has frequently treated an award of profits and unjust enrichment as parallel, largely overlapping causes of action. *See, e.g., Streamline*, 851 F.3d at 463 (overturning jury's unjust enrichment award where defendant's conduct was not willful and did not evidence an intent to trade on the mark owner's reputation); *Texas Pig Stands*, 951 F.2d at 694 (characterizing plaintiff's request for an award of profits under § 1117 as a claim for unjust enrichment).

Here, Neutron Depot has not pointed to evidence creating a genuine issue of material fact as to its entitlement to an unjust enrichment award. Specifically, the Court finds Neutron Depot has not raised evidence suggesting Bankrate took "undue advantage" of Neutron Depot by infringing upon the Mark. *See* Resp. Mot. Summ. J. [#269] at 15–16. Though Neutron Depot argues Bankrate took undue advantage by using the Mark as a search engine keyword, this sort of infringement, without more, is insufficient to create an issue of fact as to Neutron Depot's entitlement to an unjust enrichment award. *See Streamline*, 851 F.3d at 463 (emphasizing the "need for evidence that the defendant had attempted to 'palm off' its goods for those of the plaintiff"); *Texas Pig Stands*, 951 F.2d at 695 (affirming district court decision to overturn jury finding of unjust enrichment where defendant knowingly infringed on plaintiff's mark, not "in an attempt to profit from the mark[,] but rather in simple disregard of plaintiff's rights"). This is particularly so where, as here, Neutron Depot has put forward no evidence of diverted sales or lost profits. *See Streamline*, 851 F.3d at 463 (suggesting plaintiff is not entitled to an unjust enrichment award under Texas law unless it can show lost profits or diverted sales as a result of defendant's infringement). The Court thus grants Bankrate's motion for summary judgment as to Neutron Depot's unjust enrichment claim.

## C. Injunctive Relief

"[A] plaintiff seeking injunctive relief must show a real and immediate threat of future or continuing injury apart from any past injury." *Aransas Project v. Shaw*, 775 F.3d 641, 663–64 (5th Cir. 2014) (per curiam) (citing *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011)). While the cessation of infringing activity "does not affect the determination of liability," it "may make an injunction unnecessary" if there is little chance the defendant will infringe again in the future. *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 198 (5th Cir. 1998) (citations omitted).

Here, Neutron Depot has not shown a real or immediate threat Bankrate will infringe upon its Mark in the future. To the contrary, it is exceedingly unlikely Bankrate will infringe on the Mark again. For one, Bankrate has sold off the insurance lead division accused of infringement and consequently lacks further motivation to infringe on the Mark. Mot. Transfer [#149-1] Ex. A at 2. Further, there is no indication Bankrate has infringed upon the Mark since 2014. *See* Resp. Mot. Summ. J. [#269] at 6–7. In these circumstances, there appears to be little chance of future infringement by Bankrate,[9] and the Court therefore denies Neutron Depot's request for a permanent injunction.

## D. Punitive Damages

Punitive damages may be awarded only if damages other than nominal damages are awarded. TEX. CIV. PRAC. & REM. CODE § 41.004(a).[10] Neutron Depot does not seek actual damages, and the Court has granted summary judgment in Bankrate's favor on Neutron Depot's

---

[9] This is especially so in light of the relatively meager profits earned through Bankrate's infringing use of the Mark. *See* Mot. Summ. J. [#267-10] Ex. 9 (Daupin Supp. Report) at 10–13 (noting revenue from infringing use of the Mark totals less than $1,000).

[10] Neutron Depot does not specify whether seeks punitive damages under state or federal law. The Court presumes Neutron Depot intended to seek punitive damages under state law because punitive damages are not recoverable with respect to Neutron Depot's federal claims. *See Taco Cabana Int'l v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991) (noting § 1117 does not allow for an award of punitive damages).

claims for an award of profits and unjust enrichment. Thus, because Neutron Depot will not recover anything other than nominal damages in this action, punitive damages are unavailable.

## Conclusion

The Court grants Bankrate's motion for partial summary judgment as to Neutron Depot's claims for award of profits, unjust enrichment, injunctive relief, and punitive damages on the ground no reasonable factfinder could conclude, on the present record, that Neutron Depot is entitled to these forms of relief. However, because Bankrate has not moved for summary judgment as to liability, Neutron Depot's claim under § 43(a)(1)(A) remains set for trial.

Accordingly,

IT IS ORDERED Bankrate's Motion for Partial Summary Judgment [#267] is GRANTED.

SIGNED this the  1st  day of May 2018.

*Sam Sparks*
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE